IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERTO CHACON WILSON,

      Petitioner,

v.                                                              No. 2:26-cv-01427-DHU-GBW

MARKWAYNE MULLIN, in his official capacity as
Secretary, U.S. Department of Homeland Security; MARY
DE ANDA-YBARRA, in her official capacity as Field Office
Director, El Paso Field Office, Enforcement and Removal
Operations, U.S. Immigration and Customs Enforcement;
TODD BLANCHE, in his official capacity as Acting
Attorney General, U.S. Department of Justice; and
MELISSA ORTIZ, in her official capacity as Warden,
Torrance County Detention Center,

      Respondents.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on Petitioner Roberto Chacon Wilson's Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. Having considered the parties' briefs, the record, and the relevant law, the Court **GRANTS** the Petition.

**I.**
**BACKGROUND**

Petitioner Roberto Chacon Wilson is a native and citizen of Cuba who entered the United States on or about December 8, 2024. *Id.* ¶ 24. He was detained by immigration officials, issued a Notice to Appear, and released on a temporary form of parole. *Id.* ¶¶ 25-26. Since his entry and release, he has accrued no criminal history. *Id.* ¶ 32.

Following his release, Petitioner established a life in the United States. He moved to the Bronx in New York City, New York, with his mother and sister. *Id.* ¶ 27. He enrolled in English classes and focused on acclimating to the country. *Id.*; Doc. 1-3 at 22. On February 18, 2025, he

also filed a timely Application for Asylum, Withholding of Removal, and for Withholding Under the Convention Against Torture ("CAT"). Doc. 1 ¶ 28.

On July 9, 2025, Petitioner attended a preliminary hearing at the New York City Immigration Court in New York, where the Immigration Judge ("IJ") granted him a continuance to afford him time to seek counsel. *Id.* ¶ 30. As Petitioner was leaving the courtroom, Immigration and Customs Enforcement ("ICE") detained him. *Id.* ¶ 31.

On August 29, 2025, the Department of Homeland Security filed a Motion to Dismiss Petitioner's removal proceedings, which the IJ granted. *Id.* ¶ 35. On September 12, 2025, Petitioner filed a timely appeal with the Board of Immigration Appeals ("BIA"), which remains pending. *Id.* ¶ 36; Doc. 1-6 at 2. Accordingly, Petitioner's proceedings remain ongoing. Doc. 1 ¶ 36 (citing 8 C.F.R. § 1003.39).

On December 8, 2025, Petitioner became eligible for lawful permanent residency under the Cuban Adjustment Act; he filed an Application to Register Permanent Residence or Adjust Status with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 38; Doc. 1-2 at 2. On March 3, 2026, Petitioner submitted an ICE release request, which remains pending. Doc. 1 ¶ 39; Doc. 1-3.

On April 16, 2026, Petitioner was transferred to the Torrance County Detention Facility in Estancia, New Mexico, where he remains detained. Doc. 1 ¶ 40. Throughout his time in detention, Petitioner has not been able to seek release on bond. *Id.* ¶ 42.

Petitioner subsequently filed the instant Petition. In the Petition, Petitioner argues that Respondents are currently detaining him without the opportunity for release on bond in violation

of the Immigration and Nationality Act ("INA"). *Id.* ¶¶ 143-47. [1] Petitioner specifically argues

that his detention is governed by 8 U.S.C. § 1226(a), and not 8 U.S.C. § 1225, because

Respondents arrested him while he was already residing in the United States. *Id.* ¶¶ 145-46.

Petitioner further argues that his detention without a custody re-determination hearing violates

the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 103-05, 108-12. He requests Writ of

Habeas Corpus ordering his immediate release, or, alternatively, a bond hearing within fourteen

(14) days. *Id.* at 47. Petitioner also requests attorney fees and costs pursuant to the Equal Access

to Justice Act ("EAJA"). *Id.* at 48.

Respondents' position is that Petitioner is correctly classified as an applicant for

admission under § 1225(b)(2)(A) based on the plain language of the statute. Doc. 8 at 1.

Respondents, however, acknowledge that the Court, Chief District Judge Gonzales, recently

reached the opposite conclusion in *Patel v. Noem*, No. 1:25-cv-012610KG-GBW, 2026 WL

103163 (D.N.M. Jan. 14, 2026) "on facts substantially similar to those the currently before [this]

Court." *Id.* Respondents further state that the *Patel* "would control the result here if [this] Court

adheres to the decision, as the facts are not materially distinguishable for purposes of the Court's

decision on the legal issue of which statutory provision authorizes Petitioner's detention." *Id.* at

2.

---

[1] Petitioner also argues that his temporary parole was valid when ICE detained him, in violation of the INA and the procedural component of the Due Process Clause. *Id.* ¶¶ 88-102, 106-12, 151-55. He further argues that his detention has become prolonged, in violation of the substantive component of the Due Process Clause. *Id.* ¶¶ 113-16, 159-63. However, because the Court grants Petitioner's Habeas Petition on his bond-related INA and Due Process claims, the Court "decline[s] to address th[ese] remaining claims of error." *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002).

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing that she is being detained in violation of the INA and the Due Process Clause.

The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.
## DISCUSSION

In *Santillan Quiroz v. Mullin*, the Tenth Circuit Court of Appeals held that "noncitizens who enter[] the United States and [a]re thereafter detained in the interior of the country" are subject to 8 U.S.C. § 1226(a) and, therefore, entitled to an individualized bond hearing. 180 F.4th 1226, 1237 (10th Cir. 2026). The Tenth Circuit's decision in *Santillan Quiroz* is in accord with Chief District Judge Gonzales' decision in *Patel*, where the Court held that Petitioner Patel, who entered the United States on August 2022 without inspection and was detained by immigration officials on December 8, 2025, in the interior of the country, was properly subject to § 1226(a) and entitled to a bond hearing. 2026 WL 103163, at *1. Moreover, Respondents state that *Patel* "would control the result here . . . as the facts are not materially distinguishable for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." Doc. 8 at 2. Given that *Santillan Quiroz* is in accord with *Patel*, and Respondents' statement that *Patel* controls, the

Court finds that *Santillan Quiroz* controls here, where Petitioner entered the United States in 2024 and was last detained on July 9, 2025, in New York City, New York. Petitioner is, therefore, subject to § 1226(a) and entitled to a bond hearing. Respondents' misclassification of Petitioner as subject to § 1225(b)(2)(A), and refusal to provide him with a bond hearing, violates the INA and the Due Process Clause.

## IV.
## REMEDY

Federal district courts are vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus." *Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 2113 (1987) (internal quotation marks and citation omitted). Federal district courts, therefore, possess the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243. This includes the "power to grant *any form of relief necessary* to satisfy" the justice requirement. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992).

Here, Respondents state that *Patel* controls this case, essentially agreeing with Petitioner's position that his detention is governed by § 1226(a) and that he is, therefore, entitled to a bond hearing. Doc. 8 at 2. Yet, Respondents have still not provided Petitioner with such a hearing.

Moreover, as noted by the Tenth Circuit Court of Appeals in *Santillan Quiroz*, for thirty (30) years the law on § 1225 and § 1226 has been the same. 180 F.4th at 1234 (noting that Congress amended the INA thirty (30) years ago and "consolidated the Government's authority to detain noncitizens with pending removal proceedings into two provisions: § 1225 and § 1226"). The former, § 1225, applies to "the processing of noncitizens at the Nation's borders and ports of entry." *Id.* at 1236. The latter, § 1226, applies to "noncitizens who entered the United States and were thereafter detained in the interior of the country." *Id.* at 1237. The former mandates a

noncitizen's detention and affords no bond hearing. *Id.* at 1234. (citing §§ 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV), and (b)(2)(A)). The latter provides for a bond hearing. *Id.* (citing § 1226(a)(2)(A)). Respondents' contrary position is the only thing that is new. *Id.* at 1235 ("But in July 2025, the Government reversed course. For the first time in [a] thirty[(30)]-year history, the Government took the position that § 1225, specifically subsection (b)(2)(A), applied to noncitizens who had already entered the country without admission.").

Additionally, as confirmed by the Supreme Court of the United States, federal regulations require that noncitizens detained under § 1226(a) "receive bond hearings at *the outset of detention.*" *Jennings v. Rodriguez*, 583 U.S. 281, 306, 138 S.Ct. 830 (2018) (emphasis added). Petitioner here was detained on July 9, 2025. This means that Petitioner, at this point in time, should have been provided with a bond hearing over one (1) year ago. The Court, therefore, finds that the appropriate remedy in this case is Petitioner's immediate release. *Munaf v. Geren*, 553 U.S. 674, 693, 128 S. Ct. 2207 (2008) ("Habeas is at its core a remedy for unlawful executive detention . . . [and] [t]he typical remedy for such detention is, of course, release." (citations omitted)).

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within **twenty-four (24) hours** of this Order.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Monday, August 17, 2026, confirming Petitioner's timely release.

**IT IS FURTHER ORDERED** that Petitioner may submit an application for fees and costs pursuant to the EAJA within thirty (30) days of this Order. Respondents may respond to Petitioner's application no later than fourteen (14) days after the application is filed with the Court.

Finally, because the Court is adjudicating Petitioner's Petition for Writ of Habeas Corpus and granting him relief in this Order, the Court **DENIES AS MOOT** the pending Motion for Temporary Restraining Order ("TRO") (Doc. 5) in this case.

The Court will enter a separate Final Judgment but retain jurisdiction over this matter.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE